SO ORDERED: September 04, 2007.

_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: )<br>)<br>DANIEL JACOB MILLIKAN )<br>)<br>   Debtor )  | CASE NO. 07-01759-AJM-7 |

**ORDER ON UST'S MOTION TO DISMISS
REGARDING THRESHOLD ISSUE OF WHETHER DEBTOR
HAS DEBTS THAT ARE "PRIMARILY CONSUMER DEBTS"**

*Background*

A chapter 7 case filed by an individual debtor whose debts *are primarily consumer debts* can be dismissed under §707(b)(2) and (3) if the granting of chapter 7 relief to the prospective debtor would be an abuse of the provisions of chapter 7. A *presumption* of abuse arises if the debtor's level of income disclosed on his means test form ("MTF") under §707(b)(2) is sufficiently high. If no presumption of abuse arises, or if the presumption is rebutted, the case can still be dismissed under §707(b)(3),

1

depending on the totality of the debtor's financial circumstances.

The United States Trustee has moved to dismiss this chapter 7 case under both §707(b)(2) and (3). The threshold issue to be decided is whether the Debtor's debts are "primarily consumer debts". If the Debtor is correct in his assessment that $192,200 of his total student loan debt (the "Disputed Student Loan Debt") of $307,038.77 is a non consumer debt, then 58% of the Debtor's debts are non-consumer debts, the "primarily consumer debts" prerequisite is not met, and §§707(b)(2) and (3) have no application here.

The hearing on the UST's motion and the Debtor's response was held on August 6, 2007 wherein the UST appeared by counsel Charles Wharton; the Debtor appeared in person and by counsel Gary Hostetler. At the conclusion of the hearing, the Court took the matter under advisement. This entry constitutes findings of fact and conclusions of law, to the extent required under Rule 7052 of the Federal Rules of Bankruptcy Procedure.

*Discussion*

*Definition of "Consumer Debt"*

Whether a debt is in the nature of a "consumer" debt is a simple, straightforward inquiry, one would think. The Bankruptcy Code's definition of "consumer debt" is simple enough – it's a debt "incurred by an individual primarily for a personal, family or household purpose". 11 U.S.C. §101(8). This definition was adapted from the definition used in various consumer protection laws. See, H.R. Rep No. 595, 95th Cong., 1st Session, 309 (1977); S. Rep. No. 989, 95th Cong, 2nd Sess 22 (1978); see also, *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988). The Truth in Lending Act (TILA)

2

was among the consumer protection laws after which this definition was patterned, and case law under TILA held that when the credit transaction involved a profit motive, it was outside the definition of "consumer" credit. The similarities between the TILA and the Bankruptcy Code definitions of "consumer" credit and debt resulted in some bankruptcy courts adopting the "profit motive" test where the issue turned on whether the debt in question was a "consumer" debt. See, *In re Burns, (Burns v. Citizens National Bank*, 894 F.2d 361 (10th Cir. 1990) (debt incurred for the purpose of investing in the stock market was a "business" and not a "consumer" debt and therefore the debtor's motion for attorney's fees under §523(d) was denied); *In re Runski (Cypher Chiropractic Center v. Runski)*, 102 F.3d 744 (4th Cir. 1996) (debtor could not redeem debt secured by medical and office equipment under §722 since it was not a "consumer" debt); *In re Groves*, 160 B.R. 121 (Bankr. E. D. Mo. 1993) (student loans were not "consumer" debts and therefore debtor's chapter 13 plan that separately classified and proposed to pay 100% of loans while providing no more than a 40% distribution to other unsecured claims could not be confirmed under §1322(b)(1)); *In re Brown,* 162 B.R. 506 (N. D. Ill. 1993) (same).

The "profit motive" test has also been used to determine whether certain types of debts are "consumer debts" for §707(b) purposes. See, *In re Booth*, 858 F. 2d 1051 (5th Cir. 1988) (portion of loan that was applied to marina business venture was not "consumer" debt and therefore, debts were not 'primarily consumer' debts and case could not be dismissed under §707(b); *In re Traub*, 140 B.R. 286 (Bankr. D. N. M. 1992) (debts to the state and to the IRS for personal income taxes, interest and

3

penalties, as well as the penalties for the trust fund portion of taxes for the debtor's oral surgeon practice were not consumer debts; however, majority of debtor's debts were consumer in nature, and case *was* dismissed since granting of chapter 7 relief was found to be a "substantial abuse" of the provisions of chapter 7); *In re Frisch*, 76 B.R. 801 (Bankr. D. Colo. 1987) (debt that was loan from family trust for both business transactions and intra-family loans were not "consumer " debts, and even if they had been, there was no basis to find that relief would be a substantial abuse of the provisions of chapter 7, so case was not dismissed); *In re Kestell*, 99 F.3d 146 (4th Cir. 1996) (debt which was lump sum owed to former wife was a "consumer" debt, and evidence was sufficient to dismiss under §707(b) even though case was before court on appeal on other grounds).

### *Classification of Student Loan Debt for §707(b) Purposes*

Whether *student loan* debt is a "consumer" debt for §707(b) purposes has yielded some interesting, and surprising, results in that either the classification of student loan debt as non-consumer debt was determined with neither discussion nor analysis, or was not challenged because the case did not turn on the classification. *In re Hill*, 1994 WL 738663 (Bankr. D. Idaho 1994) (Perfunctorily concluding that "[o]f the debtors' $29,478.72 in unsecured debt, all but $5158.66 of student loan debt is consumer debt."); *In re Gentri*, 185 B.R. 368 (Bankr.M. D. Fla. 1995) ('[t]he Trustee acknowledges that the student loans, which total $13,380, are business loans, since they were incurred for Dr. Gentri's medical education."), *In re Dickerson*, 193 B.R. 67 (Bankr. M. D. Fla. 1996) (concluded $10,172.20 student loan debt was "non-consumer"

debt, without discussion, where issue was whether debt secured by interest in real property was "consumer" debt).

The *Stewart* line of cases provides the most in depth analysis of determining whether student loans are "consumer" or "non consumer" debt for §707(b) purposes. The debtor in *Stewart* had completed his residency in obstetrics-gynecology ("OB/GYN") and was under university fellowship training as a high risk obstetric specialist. *In re Stewart*, 201 B.R 996, 1000 (Bankr. N. D. Okla. 1996) ("*Stewart I*"). Of his total scheduled debt exceeding $2,000,000, $520,000 represented student loans used for both undergraduate studies and medical school. Of this $520,000, $320,000 were loans from his former in-laws (the "intra-family loans") and the remaining $200,000 were loans from institutional lenders (the "institutional loans").

This Court quotes at length the eloquent discussion of the *Stewart I* court regarding student loans in the §707(b) context:

> Section 707(b) was not enacted to narrow and discourage Court review of abusive cases, but to broaden and encourage such review. The term "consumer debt" as used in §707(b) serves to direct the Court's attention to a type of bankruptcy case which is especially liable to abuse and especially deserving of review. That type of case involves an individual debtor who voluntarily (in the sense of "on his initiative, at his option") takes advantage of modern easy-credit practices to accumulate debts, for the immediate purpose of satisfying his private appetites and maintaining or enhancing his personal qualities and lifestyle or those of his dependents - often in circumstances which offer creditors little security, because the benefits acquired by the debts are used up ("consumed") by the debtor himself and assimilated to his person - and who effectively avoids repayment by keeping his unconsumed property and his income from wages or professional earnings to himself and from his creditors, despite even bankruptcy, e.g. pursuant to 11 U.S.C. §§ 522(b), 524(a)(2), 541(a)(6). The term "consumer debt" as used in § 707(b) should be construed broadly enough to accomplish the Congressional purpose of permitting and encouraging judicial review of such cases.
>
> A classic case is the debtor who "binges" on credit cards while dissipating the

5

> funds on luxury vacations, high-priced meals, and gambling.  Although this is a classic case, it need not be the only case.  Modern easy-credit practices are not limited to signature loans and credit cards.  They include student loans, which are made available by commercial lenders under non-commercially lax standards by arrangement with governmental units acting on grounds of social policy.  It makes little difference whether student loans are used "directly" to pay tuition or "indirectly" to pay living expenses during a period of schooling: either way, the money is used to enable the debtor to acquire further education.  No one forces a debtor to incur student loans; such debts are incurred on debtor's own initiative, at his option, in hopes of enhancing those most personal of qualities, the functioning of his own mind and his own hands, and thereby benefitting himself, his family and his household for the rest of his life.  Such intangible benefits, acquired with creditors' money, are assimilated to the debtor's own person, and cannot be conserved as security for payment of the debt.  But if the debtor's higher education gains him a higher salary, he can keep that benefit to himself, especially if he uses bankruptcy to cancel his creditors' right to use *in personam* debt collection methods. In effect, the student borrower gets "personal" benefits while avoiding "personal" payment.  This scenario differs from the credit-card binge only in incidental details.  Intra-family loans for educational purposes are also indistinguishable in principle.  The only difference is that in such instances, easy credit results from personal relationship.

201 B.R. at 1004.  The debtor contended that the student loans were business debts since they were incurred to pay for his college and medical school education, an education that presumably was pursued for a profit motive.  As to the application of the "profit motive" test, the bankruptcy court observed:

> Courts have held that a "consumer debt" for purposes of § 707(b) is one which has no "profit motive".  *In re Booth*, 858 F.2d 1051, 1054-1055 (8th Circ. 1988); *In re Kelly*, 841 F.2d 908, 913 (9th Circ.1988); *In re Nolan*, 140 B.R. 797, 800-801 (B.C., D.Col. 1992); *In re Bell*, 65 B.R. 575, 577 (B.C. E.D.Mich. 1986); *In re Almendinger*. 56 B.R. 97, 99 (B.C., N.D.Ohio 1985).  Profit motive is relevant but not necessarily decisive for several reasons.  First, there are the facts of this case.  The evidence shows that a significant part of the funds from Stewart's so-called student loans went to pay living expenses, vacation expenses, and the like for Stewart and his family, during the long period of his education as a doctor.  And Stewart himself emphasized his long-standing personal ambition, humanitarian zeal, and disregard for immediate high income. He is in no position to insist that his student loans were incurred for profit and not for "a personal, family, or household purpose".  Also, there are certain considerations of principle and of statutory construction.  *Few human activities are entirely innocent of a profit motive*; and it is "perverse ... [to] credit Congress

> ... with enacting § 707(b) with the specific design that it apply to almost no one," *In re Higginbotham*, 111 B.R. p. 960. Courts should be cautious of replacing the terms of statutes, and the sometimes complex legislative considerations which they encapsulate, with oversimplified judicial catch-phrases like "profit motive". *Congress did not define "consumer debt" as a "debt incurred by an individual having no profit motive," but rather as a "debt incurred by an individual for a personal, family or household purpose". Nothing is more intimately personal that the debtor's own education - what goes, so to speak, between the debtor's own ears. Debts for loans which further that "personal" endeavor, whether the source of the money be institutional or intra-family, come within the literal terms of "consumer debt" as defined in § 101(8), and within probable Congressional intent in employing such term(s) in § 707(b).*

201 B.R. at 1004-05 (emphasis added). The bankruptcy court concluded that all of the student loans – both the intra-family and the institutional loans – "should be treated as 'consumer debt' whether or not they were incurred for an indirect, incidental or ultimate profit motive...[i]t appears to this Court that student loans in general should be treated as 'consumer debt', at least absent unusual facts or factors of which this Court is not presently aware". 201 B.R. at 1005. The case was dismissed under §707(b).

The bankruptcy appellate panel for the Tenth Circuit affirmed the bankruptcy court's finding that the student loans were "consumer debt" but tempered it by adding "[w]e conclude that students loans are not consumer debts per se. The primary purpose for which the debt was incurred must be determinative. There may be circumstances in which the debtor can demonstrate that the student loan was incurred purely or primarily as a business investment, albeit an investment in herself or himself, much like a loan incurred for a new business". *In re Stewart*, 215 B.R. 456, 465 (10th Cir. BAP, 1997) ("*Stewart II*"). The Tenth Circuit Court of Appeals affirmed the lower courts, and agreed that the $320,000 intra-family loan was used primarily for family

7

living expenses and therefore were "consumer" debts. The court was unwilling, however, to categorize all of the institutional loan as "consumer" debt but found that a minimum of $63,000 was used to pay the debtor's support obligations and therefore at least that much was in fact "consumer" debt. Since the debtor's debts were primarily consumer debts and since substantial abuse existed, dismissal under §707(b) was appropriate. *In re Stewart*, 175 F.3d 796, 806-07 (10th Cir. 1999) ("*Stewart III*").

Here, the Debtor alleges that, of the total $307,038.77 student loan debt, $192,200 of it was used for "mandatory" educational expenses, such as books and tuition. The Debtor testified that his motivation to attend dental school was to earn a large income, and therefore, the mandatory education expenses incurred in furtherance of that "profit motive" renders at least that portion of his student loans a business or non consumer debt.

This Court finds that the "profit motive" test is unworkable in analyzing whether a particular student loan is a "consumer" debt. To borrow from *Stewart I,* "few human activities are entirely innocent of a profit motive". *Stewart I*, 201 B.R. at 1005. Even though the use of undergraduate and graduate education may lead to a financially comfortable lifestyle [1] , such education is personal in nature; it resides only within the person who attends the classes and earns the degree. Education is a non transferrable asset that can only be used by the individual, unlike office equipment or leased office space or even a dental practice that can be purchased and transferred. (Loans for these items have been properly treated by the debtor as non consumer debts). As the

---

[1]What prospective college graduate doesn't want to make money? And, how much needs to be earned to make a "profit" – enough to afford a lavish home or just enough to afford rent?

8

court in *Stewart I* observed, "[n]othing is more intimately personal that the debtor's own education - what goes, so to speak, between the debtor's own ears." 201 B.R. at 1005.

  Furthermore, the assertion that the Disputed Student Loan Debt is directly related to the Debtor's "profit motive" behind earning the degrees may lead to absurd results. If the Court were to faithfully follow the "profit motive" logic here, is it obligated to dissect further the loans used to pay for tuition and books? For example, would money spent for tuition or books used for elective classes , say, art history, or archaeology still qualify as non consumer debt even though the Debtor never intended to work as an archaeologist or an art historian? Had the Debtor spent his first two years of college as a mathematics major, would the loans used for tuition and books associated with that period still be non consumer debt even though he never became a mathematician and switched his major to biology, earning no "profit" whatsoever from his mathematics education? Taking the "profit motive" test to its illogical extreme would require the Court to analyze the utility of every class taken and every book purchased with respect to the degree earned.

  The difficulty with the profit motive test is that it places in the hands of the debtor the means to characterize the debt. If a debtor testified that he or she had attended school for humanitarian reasons or just for the personal satisfaction of learning, the student loan could be considered a consumer debt. If the debtor testified that he or she had attended school primarily to earn a large income, the *same* loan could now become a non consumer debt. The result of applying the "profit motive test" allows a debtor to tailor his or her testimony to determine if a debt is to be considered a consumer or non consumer debt.

The "profit motive" test could affect other loans as well. A debtor who is not self employed could assert that the loan for his personal vehicle which he drives to and from work is a non consumer debt because the vehicle was purchased for the business purpose of providing transportation to the debtor's place of employment - employment which earns him a profit. Conversely, a debtor wishing to characterize the *same* debt as "consumer" could assert that the debt for his personal vehicle was incurred for the purpose of transporting the children to school and running errands. Can the *same* car loan be either a consumer or a non consumer debt depending upon the debtor's testimony?

Such characterization of use of a vehicle could have ramifications in other ways with respect to the debtor's bankruptcy. Debtors often testify that they need their car to get to and from work, presumably to earn a living thus displaying a profit motive in buying the vehicle. Pursuant to the profit motive test, the car loan now has become a non-consumer or business debt. Such a characterization could have consequences if a debtor wanted to redeem the car, as §722 allows redemption of only a consumer debt. See, *In re Runski (Cypher Chiropractic Center v. Runski)*, 102 F.3d 744 (4th Cir. 1996).

Finally, the "profit motive test" works to the benefit of those who are most likely to have the ability to pay their creditors and to the disadvantage of those who are least able to pay their creditors. Those with a large amount of student loan debt and the greatest amount of education and, who, in turn, have the greatest earning potential can invoke the profit motive test and essentially fly under the §707(b) radar screen while the factory worker with an extra $100 a month and little or no student loan debt is forced to pay his creditors in a chapter 13 plan. This test would be particularly beneficial to those

10

who earned professional degrees from expensive institutions e.g., a medical degree from Harvard or Johns Hopkins, a law degree from Yale or Duke. The means test ushered in by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") is based on the fundamental notion that those who have the means to repay their creditors in whole or in part should do so and that a debtor should not continue to live a privileged lifestyle at the expense of his creditors. Granting chapter 7 relief to the Debtor here who has no dependents, earns $177,000 annually, drives a Mercedes for which he pays $1248.00 every month, has a monthly rent payment of $1700.00, and is able to afford a $3000.00 student loan payment does not square with BAPCPA's lofty goals of personal fiscal responsibility and repayment to creditors by financially able debtors.

The Court finds that the Disputed Student Loan Debt is in the nature of consumer debt. Consequently, the Debtor has "primarily consumer debts" in that 58.4% [2] – a majority [3] – of the Debtor's total debt is "consumer" debt and of the 34 debts listed, 25 of them are consumer in nature. Consequently, the prerequisite under

---

[2] Total debt scheduled:    $1,157,631.19

Total secured consumer debt (undisputed) : $290,420.80
Total unsecured consumer debt (including
the Disputed Student Loan Debt):    $385,871.06
Total Consumer Debt:    $676,291.86

Percentage of consumer debt
to total debt:    $676,291.00  =  58.4%
              $1,157,631.19

[3] "Primarily" (as in "primarily consumer debts") means a ratio a consumer to nonconsumer debts of over 50%, and not only the amount, but the number of consumer debts should also be considered. *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988).

11

§§707(b) and (3) has been met. Because the focus of the August 6th hearing was this threshold issue, other issues under §707(b)(2) and (3) raised by the parties were not fully addressed at that time. Further hearing on those issues will be set in due course.

# # #

Distribution:

Gary Hostetler, Attorney for the Debtor / Charles Wharton, Attorney for the United States Trustee / Case Trustee